All right, counsel, you can proceed. Thank you, Your Honor. Good morning, and may it please the Court. Elizabeth Newman, representing Mr. Biggs. Your Honors, I'd like to focus on what I think is the heart of this case, and that's how the proffers of the experts, and particularly that of Dr. Coopers, made out the elements of the self-defense defense, particularly, of course, viewed in the light most favorable to Mr. Biggs, as they must be. I think the two elements that the district court found most problematic were the imminence element and the proportionate responsive force element, which it characterized somewhat differently as a lack of reasonable alternatives. So I would like to focus on those two elements and how the experts proffers, again, particularly that of Dr. Coopers, made out those two elements. So you think that's your strongest argument? I think that's the portion of the case in which the district court had the most problem. I think the place where we're on firmest ground is the evidentiary rules argument that there was no problem with the bulk of either expert's report under Federal Rule of Evidence 704B. Well, how about the fact that the district court applied the wrong legal standard in determining whether or not the defense of self-defense would be applicable in this case? Well, the district court did apply the wrong standard with respect to the third element. Is that what the Court's referring to? Well, it actually applied a duress analysis. It did. That's the third element that it became confused about. But if it committed legal error in deciding in the applicable law, why does the rest of this matter? Why don't we just reverse on the basis that there was legal error and therefore your client needs to be reanalyzed under the correct law? I'd be perfectly happy with that result, Your Honor. And if that's what the Court's inclined to do, I'd be inclined to sit down. Well, I'm not speaking for anybody. I'm just saying it seems to me I would start out with the legal error, because everything flows from that. Right. That would be the third element that the Court found so problematic, that it was not analyzing the case under the appropriate element, which is a lack or a use of reasonably proportionate force, which is what this circuit's case law says is the standard, but rather under the duress element of lack of reasonable alternative. And we argued both in our brief, not knowing, of course, how the Court would view this issue. Well, what is the consequences? I mean, this is a conditional plea agreement, right? Yes. So if we were to decide that the district court applied the wrong legal standard in even analyzing whether your client could present the defense at all, therefore depriving him of his defense, what happens? It goes back to the district court, or I should say back to a different district court judge, since the district court in this case has since retired. And Mr. Biggs is put back in the position he should be in, which is that everything is now open. He's now before the district court once again, and he is entitled once again to present his arguments about why his experts proffers meet the elements properly stated of the standard. It's a different question than permitting this particular expert to testify. You still have to go through your Daubert routine and get the expert qualified, right? Certainly, Your Honor. And you're not taking the position absolutely that you're Daubert qualified now. I think we actually are taking the position that we're Daubert qualified now. The two Daubert elements being the methodology being valid and the opinion being relevant. If you got a reversal, wouldn't you be entitled to an entirely new trial, including the Daubert case? Conceivably, Your Honor, since the district court ---- Are you going to try this case in bits and pieces to a jury? I'm not sure I understand the Court's question. Are you going to take what you want out of the prior trial and just read the record into the new trial? There was no trial before, Your Honor. It was all done on the government's motion to preclude the experts altogether. So there is no real prior record to read to any jury. So what you are is just going into trial? Exactly. Or engaging in other plea negotiations, perhaps the same ones. I mean, I don't know how that would ---- Exactly. Exactly, Your Honor. Okay. Coming back to the Court's question about the proportionate force issue, if, again, if the Court is inclined to view this as a district court's error in the ---- in considering which standard to apply, then, of course, the Court should reverse and remand. If, perhaps, some members of the panel are more inclined to view this as more akin to a duress defense, then it should still reverse and remand. But you argued this as a self-defense error. Yes. Yes. Why would we pick the duress defense? I'm happy to hear that perhaps the Court would not be inclined to endorse the district court's approach to this issue. But she just applied the wrong standards, that's all. She had, for some reason, confused about it. I would certainly agree with that. Let me move on then, perhaps, to the imminence issue, since the district court had found that prong also to be very, very problematic. But, again, if Dr. Cooper's expert report is credited, then the attack, or at least the harm threatened to Mr. Biggs was certainly quite imminent, and I would actually also point the Court to a portion of the proffer made at the final hearing on this matter, it's page 126 of the excerpts, that Mr. Smith actually did threaten Mr. Biggs once again as the two men were on the way to the wrecked cages where the incident ultimately occurred. And so I would submit that the imminence prong of this self-defense defense is certainly satisfied. Moving back again to the reasonable proportionate force, I would submit again that Dr. Cooper's expert report and his proffer do satisfy that prong as well. Mr. Biggs needed to make a public and obvious show of resistance to the threats that Mr. Smith posed to him, and he did so. And once Mr. Smith apologized, according to the expert reports, he stopped his conduct and the guards entered. So I would argue that the areas in which the district court had found awkward in this case really should not be awkward for this Court. A reversal is required, whether on the – because the district court misinterpreted the legal standard and because the district court's difficulties with the imminence prong were also misplaced. Does the Court have any further questions, or should – perhaps I should reserve the rest of my time? Why don't you reserve your time? Thank you, Your Honor. May it please the Court, Jason DeBrett for appearing on behalf of the United States. Your Honors, the briefing of the parties and defense counsel's argument just now made clear that the facts of this case are undisputed. The defendant – The defendant disputed whether, at the time that Mr. Biggs stabbed the other person with the shank, that it's – we don't know whether the other person was handcuffed to the bars or not. The defendant, in his briefing in lower court, conceded that the victim was handcuffed at the time. In response, the government submitted that it had evidence that was contradictory, namely interviews of prison guards that conflicted about the handcuffing status of the victim. Be that as it may, the important facts, the critical facts are undisputed, that the defendant chose to engage in a premeditated armed attack in which he attacked with a shank a helpless and unresisting victim. And going back to the Court's earlier point, though, with defense counsel's argument, the question for this Court is whether on these facts, the facts submitted and argued and proffered by the defendant, a self-defense case can obtain. And the answer is clearly no. And that answer is established both by this Court's decision would – It's not – the question is not whether they'd win. It's whether they should be able to prove – to attempt to prove their theory of the defense. Precisely, Your Honor. And the Court actually, I would submit, got the standard correctly. The Seventh Circuit in Haynes explained – Do you have a Ninth Circuit case? Your Honor, it's actually – well, the Ninth Circuit case is – What about the Kaiser? To what point? The standard. The standard to be applied to self-defense. Defense. Your Honor, I think to sort of cut to the chase, the point is that there are abundant Ninth Circuit authorities stating that imminence is a requirement. And the question is, what does imminence mean? Imminence means – Do you distinguish between duress and self-defense? No, Your Honor. Do you think they're just the same common defense? No, Your Honor. There are two species of the lesser evil's defenses. And as explained clearly by the Seventh Circuit in Haynes, all lesser evil's defenses contain among them an element requiring that if a defendant chooses to break the law and use violence, that defendant must have no lawful alternative. The way that requirement is stated by this Court in the self-defense context is through imminence. What does imminence mean? Imminence means that you do not have time to seek a lawful alternative. If your threat is an ongoing or evolving threat, your threat is no longer imminent. Because it's not imminent, you have a chance to seek a lawful alternative. That is, to not attack, to not engage in violence, and to seek, in this case, the assistance of the prison staff. Because, according to the defendant's own proffer, he chose not to seek the assistance of the prison staff and chose instead to take violence into his own hands and stab a helpless victim, he is not able to put forward to the jury his self-defense case because simply he has none. Your Honor, I'm not sure about that, given the revelations that have been coming out and the criminal charges and dismissals of guards at Lompoc. Your Honor, that is not part of this record. It's not part of this record. And I agree with it. Excuse me. Hello? You're right. It's not part of this record. But it was the reason it never was able to be part of this record, because it was that theory of the defense was precluded at the outset. But, Your Honor, the problem is Your Honor is exactly correct. That's the problem. The district court in this case gave the defendant multiple hearings. And again and again, the defendant was given an opportunity to argue, to proffer facts, saying to the court, if this goes to trial, we will put forward evidence to this jury stating that my client was unable to seek the help of the guards because the guards at Lompoc would not provide assistance. He didn't do so. He could have – if these experts – I think that was part of the expert's declaration. The expert – the defendant conceded that the expert had no knowledge whatsoever had no personal knowledge, but the expert that was proffered talked about prison conditions and how the guards do not protect the inmates when they're out in the yard from violence from each other. That's what the expert said. But the government submits generalized descriptions of prison conditions generally that have no temporal nor physical relationship to the actual circumstances at the time of the attack are not enough to set forward a prima facie case. That's the problem here. If the court was generous to the defendant, gave him multiple opportunities to proffer defense, and all he had to do was come forward and say, Your Honor, I had a belief that if I approached the prison staff, I would not obtain the safety I needed. He failed to do so. His burden was minimal, just a little bit more than a scintilla of evidence to come forward and say to the court, if I get my chance to go in front of the jury, I will put forward evidence that I have no – I had no alternative, that I reasonably believed that if I approached the guards, I would not have been able to acquire the safety that I required. But he failed to do so. And having failed to proffer a prima facie case, he is not entitled then to go in front of the jury and confuse the jury with irrelevant claims about his personal background and a claim that somehow he was enabled or authorized, licensed, merely because he felt threatened to engage in a premeditated sneak attack. And that's the clear import of the court's – of this Court's decision in Wood and in Haynes. For example, in Wood, this Court noted that Wood neither sought admission of detention or transfer, and warned that ruling that in those circumstances, if this Court will allow that defendant to put forward a self-defense case or a duress case, that in essence, this Court would be giving defendants like Wood, defendants who felt threatened, a license to carry a weapon. Excuse me, counsel. Isn't the fact in this case was that Mr. Biggs was already supposed to have been moved out of that prison cell because his time that he was in there was up, and that the prison – and that the guards simply hadn't moved him yet? That's not correct, Your Honor. Is that a fact? No, Your Honor. The defendant was placed in segregation, in the hole, as it's called, because of an earlier altercation. But his time was up. He was supposed to be moved, and they didn't move him because I guess they had no place to move him. Your Honor, the point is that has no bearing on his ability to approach the prison staff and say, gentlemen, I have a new threat. Wait. Which is it? Is that the fact? That is not the fact, Your Honor. Okay. So then he was placed in segregation because of a previous incident, and nothing to do with this defendant or this victim. Wasn't he supposed to already be out of it, and instead they put another prisoner in? I don't believe there's any evidence to that effect in the record. My understanding of the facts of this case are that the defendant, faced with a new threat, could have approached prison staff and said, gentlemen, this person is a threat to me. You're not answering my question. My question isn't whether or not he approached prison staff. My question is, wasn't he supposed to be out of that segregation unit by the time the confrontation occurred? I don't believe that's correct, Your Honor. Okay. The point I'm making, Your Honor, is even if that were correct, if I'm mistaken in the record, that has no bearing on whether or not the defendant could have approached prison staff and said, gentlemen, this person is a threat to me, I need to be removed from this situation immediately because Mr. Smith poses a threat to me, he chose not to do that, there is nothing in the record explaining why he chose not to do that. In fact, the only explanation is Mr. Cooper's second report where he says that the defendant chose not to seek the prison staff's help because to do so would have undermined his status as a man among men, a man who could walk the line. And rather than undermine his status as a macho man in prison, he decided to stab another human being in the head with a shank. That is not self-defense, Your Honor. And with all due respect, having failed to produce proper facts that establish a prima facie case of self-defense, the district court was proper in barring the defendant from putting forward the self-defense case that he presented in his briefing. And just to go back to the elements issue, the problem that we have is that whether we call it eminence or we call it a lawful alternative, this Court, when it allows defendants to argue that they were acting in self-defense, this Court consistently, uniformly requires defendants to put forward facts showing that they had no choice other than to engage in violence. And whether we call it eminence or lawful alternatives is, in the end, semantics, and that is the upshot of the sentence or execution in Haines. And I submit to this Court that it's imperative that this Court consider seriously the question of whether or not its standard in self-defense cases will allow any prison inmate who feels threatened to have a license to, A, carry a weapon, and, B, engage in a premeditated, offensive, aggressive attack, because that is the upshot of the defense argument in this case. All right. Thank you, counsel. Your Honors, first, as to what the record showed about whether Mr. Biggs was supposed to be transferred, whether he was awaiting transfer, the information that we have in the record before this Court is on page 3 of Dr. Cooper's report. It says, "...instead he, Mr. Biggs, was awaiting transfer to another prison, and the staff left him in segregation pending transportation." So the Court's understanding of the facts is correct as they are reflected in this record. Second, as to Wood, not only – I mean, as the Court has pointed out, we don't have any facts in that case suggesting what the circumstances were, was he – could he really have – I mean, as far as we know from the facts of that case, that defendant really could have requested a transfer, really could have gone to protective custody, and those would have been meaningful solutions to the issue that he faced. But we do have facts in our record that show that that was not the case here. As the Court has pointed out, Mr. Biggs was already awaiting transfer, and he couldn't go into protective custody because he wouldn't be safe there. It's not the case, as the government has stated just now, that Mr. Biggs simply didn't want to undermine his status within the prison. It's the case that he wasn't – that doing other than what he did would have left him open to attack and possibly gotten him killed. The record does show that he had been attacked five times while in prison, stabbed five times, once while handcuffed with a guard nearby who did nothing to help. And, in fact, the Cooper's report – I think it's on page 6 there – does say as well that in all of his years in custody, and Mr. Biggs has been in Federal custody since 1977, he had never seen a guard come to the aid of an inmate who was being attacked. Thank you very much, Your Honors. Counsel, would you pick up with Maria Stratton the form of certification that the public defender is using on its briefs as to margins, type size, number of words, and use the Ninth Circuit standard form? It's all there. Certainly, Your Honor. Can you check the boxes instead of making up one that is incomplete in this case? Oh, I beg your pardon, Your Honor. I'm sorry, Your Honor. I'll certainly take that up with the appellate unit. Thanks. And I'll pull in if you'll take that message back on the briefs. Certainly, Your Honor. And write a memo for her successor. Thank you, Your Honor. I'll certainly do that. We're very happy for her. Thank you. All right. Thank you. United States v. Biggs is submitted.
judges: Beezer, Hall, Wardlaw